[No. 6,020.]

# HELBING v. THE SVEA INSURANCE COMPANY.

FIRE INSURANCE — WARRANTY. — A provision in a policy of insurance, that the application for insurance shall be considered as a warranty, and that if the property insured is overvalued in it, the policy shall be void, applies only where the statement as to value is intentionally false.

ID.—FRAUD.—So, also, where the policy provides that all fraud, or attempt at fraud, by false swearing as to the loss, shall cause a forfeiture of all claim under the policy, a wrongful or intentional false swearing is intended, and not a mere discrepancy, or innocent error.

ID. — EVIDENCE — PRESUMPTION. — Whether fraud is to be inferred from an excessive statement of the value of the property in the original application, or of the loss in the preliminary proofs, is a question of fact; and in neither case does a *legal* presumption of fraud arise; nor is the burden cast upon the assured to establish that his statement was not intentionally false.

ID.—LAW OF THE CASE.—*Held*, accordingly, that it was error in the Court below to instruct the jury that the existence of a discrepancy between the statement of the assured as to his loss, and the actual loss, would give rise to a *prima facie* presumption of fraud; but that, as the instruction was in favor of the losing party, it must, perhaps, for the purposes of this case, be accepted as law.

APPEAL from a judgment for the plaintiffs, and from an order denying a new trial, in the Fifteenth District Court, City and County of San Francisco. DWINELLE, J.

The facts are stated in the opinion.

*J. W. Winans*, for Appellant.

The application by plaintiffs for the insurance of the stock was an overvaluation, and vitiates the policy. By an express provision, the amount or value of the property insured, stated in the application, is made a warranty ; and whether fraudulent or not, binds the assured ; and if the value is overstated, the policy is void.

In submitting their proofs of loss, and in their examination subsequent thereto, plaintiffs were guilty of fraud and false swearing, and thereby overvalued the stock lost by the fire to an extent of more than double its value. .

In such a case none of the authorities sanction a recovery. (*Levy* v. *Bailey et al.* 7 Bing. 349; S. C. 20 E. C. L. 157; *Clark* v. *Phœnix Fire Ins. Co.* 36 Cal. 176; *Moadinger* v.

*Mechanics' Co. of W. N.* 2 Hall, 400; *Franklin Ins. Co.* v. *Culver,* 6 Ind. 137; *Moore* v. *Protection Ins. Co.* 29 Me. 94; May on Insurance, § 477.)

The burden was on the plaintiffs to establish that the discrepancy was the result of error, and not of intention to defraud; and in the absence of satisfactory explanation, fraud must be presumed. (*Marcheseau* v. *Merchants' Fire Ins. Co.* 1 Rob. (La.) 442; *Hiffman* v. *Western Marine Fire Ins. Co.* 1 La. 216; *Reymer* v. *La. State Fire Ins. Co.* 12 Id. 336; *Parker* v. *Phœnix Ins. Co.* 19 Up. Can. 122.)

The jury were instructed to this effect, but disregarded the instruction.

The finding of the jury, in placing the value of the goods lost at less than one-half of the value sworn to by plaintiff, was virtually a finding for defendant, under the authority of *Levy* v. *Bailey,* cited *supra.*

*Paul Newman,* and *D. Freidenrich,* for Respondent.

When it is provided that fraud or false swearing in regard to the proofs shall prevent a recovery, it must be intentional, and in regard to some material matter. (*Marion* v. *Great Repub. Ins. Co.* 35 Mo. 148; *Franklin Ins. Co.* v. *Updegraff,* 45 Penn. St. 350; *Muher* v. *Hibernia Ins. Co.* 67 N. Y. 283.)

It was for the jury to determine whether or not there was such fraudulent intent. (*Ins. Co.* v. *Weides,* 14 Wall. 382.) A difference between the estimate of the insured, and the amount found by the jury, even if considerable, will not sustain the defense of false swearing. (*Moore* v. *Prot. Ins. Co.* 29 Me. 97; *Israel* v. *Teutonia Ins. Co.* 28 La. An. 689.)

Department No. 1, McKINSTRY, J.:

The fourth clause of the policy contains the following:

" The application or survey, upon which the issuance of a policy is predicated, shall be considered a part of it, and a warranty by the assured. If the assured, in a written or verbal application for insurance, or by survey, plan, or description, or otherwise, makes any erroneous representation, or omits to make

known any fact material to the risk, or overvalues the prop-
erty,   *   *   *   then, and in every such case, this policy shall
be void."

And the eighth clause provides:

"Persons sustaining loss or damage by fire shall forthwith
give notice of said loss to this company, and as soon thereafter
as possible render a particular account of such loss, signed and
sworn to by them, stating whether any and what other insur-
ance has been made on the same property, giving copies of the
written portion of all policies thereon, also the actual cash value
of the property.   *   *   *   The assured shall, if required, sub-
mit to an examination or examinations, under oath, by any per-
son appointed by the company, and subscribe to such examina-
tions when reduced to writing; and, also, shall produce their
books of accounts and other vouchers, and exhibit the same for
examination at the office of the company, and permit extracts
and copies thereof to be made.   The assured shall, also, pro-
duce certified copies of all bills and invoices, the originals of
which have been lost.   *   *   *   All fraud, or attempt at
fraud, by false swearing or otherwise, shall cause a forfeiture
of all claim on the company under this policy."

It is claimed by appellant, that inasmuch as there was a dis-
crepancy of five hundred dollars between the sum named in
the "application" and the verdict, the burden of proof was
cast upon the plaintiffs to establish that the statement in the
application was not intentionally false.   But under our system,
*fraud* is ordinarily a question of fact, and the Court is not au-
thorized, except where by statute a *legal presumption* is cre-
ated, to instruct a jury that the existence of one fact is to be
*inferred* from the existence of another.   (*People* v. *Walden*, 51
Cal. 588; *Stone* v. *Geyser Co.* 52 Cal. 315; *People* v. *Cur-
rillo*, 54 Cal. 63.)   The jury may not have believed that the
application was intentionally false, even in the absence of ex-
planatory evidence.

The same is true in reference to the difference between the
statements of the assured, (sworn or unsworn) made after the
fire, and the verdict.   It may indeed be true that if the dis-
crepancy, *in view of all the circumstances,* is so great as to

convey the conviction of fraud to the reasonable mind, the jury should find fraud, as they should find in accordance with the fact in respect to every other subject; and in a plain case of a finding against evidence, the trial Court should grant a new trial. But it must be apparent that the effects of such discrepancies must vary innumerably, reference being had, in each case, to the circumstances under which the statement is made by the assured, its greater or less positiveness, and the consideration whether the verdict itself is, in the particular instance, to be treated as based upon positive data, or as an estimate only, approximating exact justice. So complicated a question is one peculiarly for the jury, the determination of which by that body can only be set aside when the Court is clearly convinced, after full consideration of all the incidents made to appear at the trial, that the verdict is wrong.

The Court below properly instructed the jury that the "false swearing" constituting *fraud* within the meaning of the policy, was willful or intentional false swearing, "not a mere discrepancy or innocent error." It cannot be maintained that the mere discrepancy, (supposing it to exist) creates a presumption, *as matter of law*, that the insured contemplated fraud when his statements were made.

But the Court below also instructed the jury, in effect, that the existence of the discrepancy would create the presumption, *prima facie*, of fraud. This was error; yet we must, perhaps, for the purposes of the case, accept it as law. (*Emerson* v. *Santa Clara County*, 40 Cal. 544.) Still, the circumstances connected with the statements of the assured may have been sufficiently convincing to satisfy the jury that the overvaluation, if such there were, was not intentional. It is true that soon after the fire the assured submitted their claim, wherein they alleged the aggregate of their losses to be over $4,500, but the claim was accompanied by an *exhibit*, from which it appeared that their estimate was based upon the amount of *bills* for goods purchased during a period of several months prior to the fire, *less* the amount of cash sales during the same period. It would not have been credible that the defendant could have been deceived by such a statement and exhibit,

and it appears affirmatively that its agents were nôt deceived. There were circumstances connected with the examination of Raschke, one of the assured, by the adjuster of the defendant, which may have induced the jury to believe that any exaggeration by him on that occasion was not the result of an intention to falsify.    Thus, while the answers to the questions put to him by the adjuster were taken down by the notary in a direct and positive form, the adjuster himself testified that the answers were given "from memory."    The aggregate of values named by Raschke in the "examination," and the two affidavits which followed it, was over forty-five hundred dollars.    We express no .opinion as to the degree of importance which should have been attached by the jury to the circumstances to which we have referred, as removing the impression of fraudulent intent produced by his varying estimates— they were to be weighed, and must have been weighed, by the jury, and we cannot, with any certainty, declare that the jury yielded too much consideration to them.

It will be remembered, also, that at the *trial* Raschke testified to a loss of some $4,800.    He had possessed better opportunities for ascertaining the actual loss than other witnesses, and we have no means of knowing how much of credence the jury, or some of them, may have given to his testimony.    The verdict found the value of the property destroyed to be $2,000.    This, certainly, was not the sum which was named by Raschke at the examination, or at the trial; but, it may be added, neither is it the sum fixed by any one of the six witnesses who testified on the subject of values.    The five witnesses (other than Raschke) varied in their estimates of the value of the property from $950 to $2,700.    No greater presumption arises from the verdict that the jury believed Raschke to have sworn falsely willfully, than that they believed it of any other witness.    If the verdict was what has been sometimes called a "compromise" verdict—that is to say, an approximation by the jury to an average of sums, of themselves but "estimates," approximating, in the opinion of each witness, to the exact value—it would seem that the estimate of Raschke at the trial must have been considered by the jury with those of the other witnesses, otherwise a finding of

two thousand dollars could not have been the result. He was examined as a witness before the jury, and they may have believed from his demeanor on the stand, and his apparent intelligence, or the want of it, that, although his estimate was too high, it was honestly made.

We conclude that we cannot declare, with an entire conviction that we are right, that the jury disregarded the evidence in deciding that Raschke had intentionally overestimated the loss to the assignors of the plaintiffs, or that the case did not present proof of such circumstances as overcame the presumption of fraud arising from the discrepancy between the statements of Raschke and the actual value of the property, if the jury believed such discrepancy was shown.

Judgment and order affirmed.

ROSS, J., and McKEE, J., concurred.