[Civ. No. 5627. First Appellate District, Division One.—April 6, 1928.]

M. J. PEDROTTI et al., Respondents, v. THE AMERICAN NATIONAL FIRE INSURANCE COMPANY OF COLUMBUS, OHIO, (a Corporation), Appellant.

[Civ. No. 5628. First Appellate District, Division One.—April 6, 1928.]

M. J. PEDROTTI et al., Respondents, v. THE COLUMBIAN NATIONAL FIRE INSURANCE COMPANY OF LANSING, MICHIGAN, (a Corporation), Appellant.

669

Miller & Thornton for Appellants.

Jordan L. Martinelli and J. F. Riley for Respondents.

CASHIN, J.—The above actions were by stipulation tried together and appeals were taken by the respective defendants from the judgments entered therein. After the appeals were taken Alex Shevits, who will be hereinafter referred to as the plaintiff, died, and the executors of his

last will and testament were substituted as parties respondent.

The action against appellant American National Fire Insurance Company was upon three policies of insurance aggregating $1,950, which became effective on April 1 and November 22, 1922, and May 1, 1923, respectively; that against appellant Columbian National Fire Insurance Company being upon a policy of $1,000, which became effective on December 13, 1923. The policies insured plaintiff against loss by fire on a certain dwelling-house situated in San Rafael, and contained the following provisions:

"Matters Avoiding Policy.—This entire policy shall be void . . . (b) in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after loss. . . . Unless otherwise prescribed by agreement endorsed hereon or added hereto this entire policy shall be void (b) if the interest of the assured be other than unconditional and sole ownership.

"Matters Suspending Insurance.—Unless otherwise provided by agreement endorsed hereon or added hereto this company shall not be liable for loss or damage occurring . . . (g) while the interest, title to or possession of the subject of insurance is changed excepting . . . (3) a change in occupancy of building without material increase of hazard."

On December 31, 1923, the dwelling-house was destroyed by fire, whereupon the assured furnished the insurers with proofs of loss in which the sum of $5,858.91 was stated as the value of the building. The defendants denied liability, and as a defense to each cause of action alleged that the plaintiff, with the intent to defraud the insurers, swore falsely in the proofs of loss with respect to the value of the property, and that his interest therein at the time of the fire was other than unconditional and sole ownership. It was also alleged by American National Fire Insurance Company as a defense to recovery upon the policies which took effect on April 1 and November 22, 1922, that the loss occurred while the plaintiff's interest in, title to and possession of the subject of the insurance was changed, and that such change was without its consent. As a further defense to the policies which became effective on May 1 and December 13, 1923, the respective insurers al-

leged that the plaintiff was not the sole and unconditional owner of the property on these dates.

The value of the building at the time of the fire and the loss was found to be in excess of the sum of $4,000, the trial court also finding against the defenses alleged by the defendants, and judgments were entered for the amounts of the policies.

The appellants contend that the findings are not supported by the evidence and that the court erred in denying their motions for nonsuit.

The testimony shows that the proofs of loss were not prepared by the plaintiff but by a builder, who estimated the value therein stated from the dimensions and arrangement of the building and a description of the materials used in its construction as given to him by the plaintiff; after measurements made on the premises he estimated the cost of replacement to be $5,858.99, and the proofs of loss were prepared and sworn to accordingly. The plaintiff testified that in his opinion the building at the time of the fire was of the value of "$4,000 to $5,000 or more." Another witness placed the value between $3,500 and $4,000; and it appeared that plaintiff in November, 1922, had agreed to sell the property for $3,000.

Notwithstanding the testimony of the last witness and that the agreement to sell was for less than the value claimed, we cannot say, in view of the testimony of the plaintiff and the builder, that the conclusion of the trial court that the statements of value in the proofs of loss were not wilfully false or made with the intention of cheating and defrauding the defendants, was unsupported.

The rule is well established that an untrue statement, in order to avoid the policy, must have been knowingly and intentionally made with the intention of defrauding the insurer; and whether a false statement was so made is a question of fact for the jury or trial court (*Clark* v. *Phoenix Ins. Co.,* 36 Cal. 168; *Helbing* v. *Svea Ins. Co.,* 54 Cal. 156 [35 Am. Rep. 72]; *West Coast Lumber Co.* v. *State Investment etc. Co.,* 98 Cal. 502 [33 Pac. 258]; *Raulet* v. *Northwestern National Ins. Co.,* 157 Cal. 213 [107 Pac. 292]; *Miller* v. *Fireman's Fund Ins. Co.,* 6 Cal. App. 395 [92 Pac. 332]).

The court found that the agreement for the sale of the property was entered into by the plaintiff on November 25, 1922, the consideration being the sum of $3,000, payable partly in cash and the balance in monthly installments with interest; that the vendee on or after said date went into possession but was not in possession on the date of the fire; that on the latter date he had ceased to make payments and had abandoned the property; that his rights under the contract were by its terms forfeited and that the plaintiff had become the unconditional and sole owner thereof. The contract made time of the essence, and provided that in the event of a failure by the vendee to perform the plaintiff should be released from all obligation in law or equity, and that all sums paid on the purchase price should be retained by him. The testimony sustains the finding as to the date of the execution of the contract. It further shows that no payments were made thereon after February, 1923, and that the vendee was in default upon the dates when the third and fourth policies took effect. It also appears that plaintiff made repeated demands for possession, and, according to his testimony, the vendee removed from the premises about three months before the fire occurred. He further testified that about two weeks before the fire he entered the building and found blankets scattered upon the floor where, he was told, the vendee's children had been sleeping, but found no furniture therein.

■ Under the provisions of the policies a change of possession suspended the insurance; but the testimony of the plaintiff (which the trial court believed) was sufficient to support the finding that the vendee was out of possession at the time the fire occurred. ■ The evidence was also sufficient to support the conclusion of the trial court that when that event happened and at the time when the policies in question took effect the plaintiff was the unconditional and sole owner of the property; that he was such when the first and second policies became effective is beyond dispute, and that the vendee was in default under his contract before the third and fourth policies were issued is clear from the testimony. The contract required no notice in order to place the vendee in default, and no waiver of his default was shown. ■ As held in the following

cases, where time is made essential, an unexcused failure to perform as provided by the contract works a forfeiture by force of the terms of the contract itself, unless the vendor elects to waive the default, and, so far as the rights of the vendee are concerned, the agreement is terminated (*Commercial Bank* v. *Weldon,* 148 Cal. 601 [84 Pac. 171]; *Oursler* v. *Thacher,* 152 Cal. 745 [93 Pac. 1007]; *Champion Gold Mine Co.* v. *Champion Mines,* 164 Cal. 205 [128 Pac. 315]; *Schwerin Estate etc. Co.* v. *Slye,* 173 Cal. 170 [159 Pac. 420]; *Fresno Irrigated Farms Co.* v. *Canupis,* 39 Cal. App. 184 [178 Pac. 300]; *Andrews* v. *Karl,* 42 Cal. App. 513 [183 Pac. 838]).

We are satisfied that the findings in each of the above cases were fully sustained by the evidence, and that the motions for nonsuit were properly denied.

The judgments appealed from are affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 31, 1928.

All the Justices concurred.