[Civ. No. 3880. Third Appellate District.—April 21, 1930.]

GEORGE SINGLETON, Respondent, v. HARTFORD FIRE INSURANCE COMPANY (a Corporation), Appellant.

Percy V. Long, Bert W. Levit and S. C. Young for Appellant.

Huston, Huston & Huston and L. H. Hughes for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a judgment in favor of the plaintiff Singleton which was entered upon a directed verdict. The suit was founded upon liability under a fire insurance policy. The defenses were urged that the fire was of incendiary origin caused by the wilful acts of the plaintiff Singleton, and that his recovery was barred by wilfully rendering a false claim of loss.

The plaintiff Singleton owned a hotel at Crescent Mills, in Plumas County, which he acquired by exchange of properties in 1924. The exchange value of this property was about $6,000. It was alleged the property was worth $8,000 at the time of the fire. The building was somewhat dilapidated. The equipment was poor and the business did not prosper. The hotel building was insured by the appellant April 2, 1926, for $4,000 and the contents for $1,000 additional. The policy conformed to the Statutes of 1909, page 404. It contained this forfeiture clause: "Matters avoiding policy. This entire policy shall be void (a) if the insured has concealed or misrepresented any material fact or circumstances concerning this insurance or the subject thereof; or, (b) in case of any fraud or false swearing by the insured touching any matter relating to this insurance of the subject thereof, whether before or after a loss." The property was subject to a mortgage of $800 held by the plaintiff Indian Valley Bank, which was paid by the appel-

lant subsequent to the commencement of the action. The cause on the part of the bank was then dismissed.

The building and its contents were completely destroyed by fire which occurred at about noon on September 2, 1926. The respondent promptly made a claim for the full amount of insurance on both the building and its contents. No question is raised on appeal as to the value of the building. The respondent included in his statement of loss which was sworn to and filed with the defendant an itemized list of personal property which he claimed was destroyed by the fire. It included no separate valuations of items but merely a claim of loss of an aggregate valuation of $2,000. The number and description of these items of personal property are included in the following statement, to wit:

| | | | |
|---|---|---|---|
| 7 | Wood beds...............at | $15.00 | $ 105.00 |
| 23 | Iron beds.................at | 13.50 | 310.50 |
| 30 | Springs ................at | 9.50 | 285.00 |
| 30 | Mattresses ..............at | 15.75 | 472.50 |
| 22 | Dressers ................at | 22.50 | 495.00 |
| 3 | Bureaus .................at | 24.50 | 73.50 |
| 52 | Chairs ..................at | 3.50 | 182.00 |
| 11 | Tables ..................at | 18.00 | 198.00 |
| 4 | Rugs ....................at | 25.00 | 100.00 |
| 4 | Sofas ...................at | 36.00 | 144.00 |
| 10 | Iron stools...............at | 4.50 | 45.00 |
| | Dishes and cooking utensils. | | 300.00 |
| 50 | Pillows .................at | 2.00 | 100.00 |
| 36 | Sheets ..................at | 2.25 | 81.00 |
| 6 | Blankets ................at | 8.50 | 51.00 |
| 36 | Pillow-cases ............at | .50 | 18.00 |
| 4 | Quilts and blankets........at | 4.50 | 18.00 |

Replacement value....  $2,978.50

Depreciation ........  1,490.00

Sound value and loss.........$1,488.50

Testimony was adduced to the effect that a substantial number of the foregoing items were not included in the building at the time of the fire. There was also evidence of circumstances tending to indicate that the respondent may have set fire to the building, which issues should have been submitted to the jury. At the close of the evidence, how-

ever, the court directed the jury to return a verdict for the plaintiff, which it accordingly did. A judgment was thereupon rendered in favor of the plaintiff for the full amount of his insurance, less the sum of $800, which had been previously paid to the bank in settlement for the mortgage which it held. From this judgment the appeal was perfected.

. At the trial, the respondent was the only witness called in his own behalf. With the exception of a single item of the personal property he persisted in testifying that he did not know the separate value of any of the articles of hotel equipment, but said that the agent, Bacher, who wrote the policy, listed the personal property at a total valuation of $2,000 and that "they were worth $2,000 to me there in the hotel."

■ Substantial evidence was adduced in support of the defense that the fire was caused by the incendiary acts of the appellant and that his recovery on the policy was barred by subsequent false, fraudulent and exaggerated sworn statements with respect to the articles of property which were burned, and their valuation.

The following circumstances which appear in the record sufficiently support the foregoing defenses to have required the submission of these issues to the jury notwithstanding the fact that they were contradicted by the respondent. A directed verdict was, therefore, erroneous.

■ The appellant was precluded from proving the value of the hotel building on the theory that the insurance company had waived its right to question the value which was asserted in the claim of loss by its failure to dissent therefrom by written notice to the insured within twenty days from the receipt of the proof of loss, as required by the policy. The policy, however, contained the further provision that: "This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof, by assenting to the amount of the loss or damage. . . . " Evidence of the value of the building was competent not for the purpose of reducing the amount of insurance to be paid thereon, but to determine whether the policy had become void on account of the incendiary acts of the insured. He testified that the building and its contents were originally procured by him at an exchange valu-

ation of only $6,000. Exchange valuations are usually exorbitant. The evidence indicates that the building had deteriorated and was sadly in need of repairs and that the business had not prospered. Assuming that the evidence might have shown the building to have been worth much less than the amount for which it was insured, it would have furnished a motive for the fire. This evidence should not have been excluded. In support of the court's ruling upon this line of evidence, the respondent relies on *Victoria Park Co.* v. *Continental Ins. Co. of New York*, 39 Cal. App. 347 [178 Pac. 724], and other similar cases. But in none of these cases was the issue of an incendiary fire or fraudulent declarations of values involved. In the case above cited it is said: "There was no issue in the case as to the fire having occurred as alleged by the plaintiff."

In the present case the witness, Joe Palazzi, testified that within a few months prior to the fire the plaintiff twice tried to persuade him to burn the hotel. The first occasion was about a month or two before the property was insured. Palazzi said the plaintiff came to his cabin near by and offered to pay him $200 if he would burn the hotel. He testified that Singleton said: "You go in the hotel. . . . I will put insurance on that building . . . and then . . . we will burn him down; if you don't want to do it, I will get somebody else. . . . I take five gallon coal oil and I will soak all of the carpet on the second floor. . . . I will let you know when I am ready to go, and . . . you can take your stuff away. . . . I will (then) build for you a little restaurant on the corner of my lot. . . . " "That (conversation occurred) a month or two before (I moved, which was in March)." As a matter of fact the hotel and its furnishings were subsequently insured April 2, 1926, for $5,000. The record discloses the existence of no previous insurance on the property. Palazzi further testified that in June after the property had been insured, the plaintiff again returned and renewed his offer to pay him $200 to burn the property. In a long cross-examination the witness strenuously adhered to his story. There is evidence to support the theory that the fire was in fact started in the upper story of the hotel, which was unoccupied. The plaintiff had been absent for a week or ten days prior to the fire and had just returned a day or two before that

occurrence. In spite of the fact that he denied having been in the alleyway behind the hotel at any time "for half a month" prior to the fire, the witness Mary Esani, who lived back of the hotel, testified that she saw him just a few minutes before the fire going into the hotel from the alleyway in the rear "through the fence," which was attached to the woodshed. This was corroborated by a witness by the name of Rose Lucier, who said: "He went right through the gap of the fence, right in front of my place there, to go in through his back yard." Within a few moments after he entered his premises from the rear smoke was seen coming through the roof of the hotel toward the rear of the building. After this Mrs. Lucier testifies that "about half an hour or twenty minutes" after she saw him leaving the hotel to go up the street he returned and she says "when I saw him peeking through between the houses, that was after the fire." Mr. William Kingdon, Jr., who was a clerk in a store across the street from the hotel, testified that about a month before the fire he saw a truck standing in the back yard of the hotel "right close to Mr. Singleton's bedroom," upon which Mr. Westover, a truckman who was then stopping at the hotel, had a number of small boxes. He said, "It was somewheres about a month before (the fire), and it was along in the morning when it was being loaded." There is evidence that during the burning of the building, while many of the neighbors were frantically working to control the fire and to save some of the contents of the building, the plaintiff stood calmly by, neatly dressed and apparently unconcerned. Mr. Kingdon, Sr., whose store across the street from the hotel was also destroyed by fire, testified that he rushed across to assist in putting out the fire, and, seeing Singleton calmly standing there, accused him of burning the property. He said: "I advanced towards him and called him a vile name and accused him of setting the fire for the purpose of bettering himself and not paying any attention to what became of the rest of us. . . . As soon as I accused him of setting the fire, he backed away from me and acted as if he was afraid of me." Shortly after the fire the plaintiff visited the garage of John Haker, who testified that he seemed nervous and agitated. He said, "He appeared rather nervous. . . . He was rolling a cigaret, his hands were shaking." Singleton owned an au-

tomobile, which was not insured and which he usually kept in a garage adjoining the hotel. He testified that about a month or six weeks before the fire this car had been taken by him to Woodland, where his wife was then living. Upon the contrary, however, Mr. Kampschmidt, an automobile mechanic, testified that he had worked on that machine at Crescent Mills shortly before the fire. He said, "I am pretty fairly positive that it was about a week or ten days before the fire." In conflict with the itemized statement of the articles of hotel furniture and their valuation, which the plaintiff had previously sworn he had lost in the fire as above specified, a number of witnesses, including the barber who rented a couple of rooms in the building and had charge of the hotel in the absence of the owner, testified to an absence of furniture and equipment which is at startling variance with the plaintiff's claim of loss. As a matter of illustration, instead of 30 mattresses, which he claimed to have lost, there is evidence that the hotel contained but 13 which were of any value; instead of 22 dressers, one witness says there were but 3; there is evidence which tends to reduce the number of 50 pillows claimed to have been lost to 12; 36 sheets were reduced to 15, and 36 pillow-cases to 15.

The foregoing state of the record conclusively indicates that the issues as to the cause of the fire and respecting the alleged fraudulent misrepresentation as to the personal property which was claimed to have been destroyed by fire, should have been submitted to the jury. The liability of the insurance company depended upon the solution of these questions.

A direction to the jury to render a verdict on a question of fact, where there is substantial evidence to justify a contrary decision thereon, is an invasion of the province of the jury and in conflict with the constitutional inhibition against a trial judge charging the jury on matters of fact. (24 Cal. Jur. 916, sec. 164; *Umsted* v. *Scofield Eng. Const. Co.*, 203 Cal. 224 [263 Pac. 799].) Upon a motion for a directed verdict every reasonable inference from the evidence should be resolved in favor of the party against whom the application is made. When reasonable minds may differ as to the effect of the evidence upon the solution of an issue of fact, the application to direct a verdict should be denied. (*Boyle* v. *Coast Imp. Co.*, 27 Cal. App. 714 [151

Pac. 25]; *Robertson* v. *Weingart,* 91 Cal. App. 715, 726 [267 Pac. 741]; 33 C. J. 130, sec. 863.) From time immemorial the courts have jealously guarded the rights of juries to pass upon facts. An application to direct a verdict upon facts should be granted with caution and only when it is clear there is no substantial evidence to support a contrary finding. In the present case it may not reasonably be said there is no substantial evidence to support the appellant's contentions that (1) the fire was of incendiary origin and, (2) false statements of the property alleged to have been lost were wilfully made. These were questions for the jury to determine. This evidence was material.

■ Under the provisions of the policy in the present case, wilful destruction of the property on the part of the insured, or wilful and false statements made by him on his proof of loss with intent to defraud the insurance company, will totally avoid the policy and relieve the insurer from all liability thereunder. (*Pedrotti* v. *American Nat. Fire Ins. Co.,* 90 Cal. App. 668 [266 Pac. 376]; 33 C. J. 19, sec. 667; 6 Cooley's Briefs on Insurance, p. 4938; 7 Cooley's Briefs on Insurance, p. 5858.)

The judgment is reversed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 21, 1930, and the following opinion then rendered thereon:

THE COURT.—The petition for rehearing is chiefly addressed to a general discussion of the weight of evidence and to a criticism of the character of the witness Palazzi, asserting that his testimony is therefore unworthy of belief. These are questions solely for the consideration of the jury and conclusively illustrate the error of directing a verdict. This court does not decide that the plaintiff burned the property or falsely swore to the value or character of the property destroyed. Circumstances disclosed by the record are marshaled in the opinion merely to indicate there was substantial evidence to support the defendant's claims and that it was, therefore, error to take these issues from the jury and direct a verdict.

The petition for a rehearing is therefore denied.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 19, 1930.