[Civ. No. 4621. Third Appellate District.—November 22, 1932.]

GEORGE SINGLETON, Respondent, v. HARTFORD FIRE INSURANCE COMPANY (a Corporation), Appellant.

Percy V. Long, Bert W. Levit and S. C. Young for Appellant.

Huston, Huston & Huston and M. C. Kerr for Respondent.

PLUMMER, J.—This action was originally commenced by George Singleton and the Indian Valley Bank, a corporation, to recover the sum of $5,000 upon a certain policy of fire insurance issued by the defendant to George Singleton, and containing a mortgage clause in favor of the Indian Valley Bank. The policy of insurance covered two items of property, $4,000 upon an hotel building in Crescent Mills, in Plumas County, and $1,000 on the contents thereof. The Indian Valley Bank had a mortgage on the hotel building for the principal sum of $800. The insurance policy provided for the payment of this sum to the mortgagee in the event of loss. Subsequent to the beginning of this action the insurance company paid the Indian Valley Bank the amount due on the mortgage in the sum of $905.31, and took an assignment thereof, and thereupon the bank dismissed its action, and the word "plaintiff" used hereinafter will refer only to the plaintiff, George Single-

ton. The trial resulted in a verdict for the plaintiff, George Singleton, in the sum of $5,000. From this judgment the defendant appeals.

Four grounds of reversal are alleged: 1st. That the court erred in directing the jury that in the event it found for the plaintiff, the verdict should be for the full amount claimed; 2d. That the evidence is insufficient to support the verdict; 3d. That the court erred in admitting certain testimony; 4th. That the court erred in giving certain instructions to the jury, and refusing to give certain instructions requested by the defendant.

Upon a former trial of this case the court directed the jury to bring in a verdict in favor of the plaintiff. Upon appeal to this court the judgment was reversed on the ground that the court erred in so instructing the jury. (*Singleton* v. *Hartford Fire Ins. Co.*, 105 Cal. App. 320 [287 Pac. 529].) A review of the opinion in that case upon appeal fails to disclose that any of the questions there presented for consideration are determinative of any of the issues presented upon this appeal. It was there held that the testimony introduced in the case was sufficient to carry the cause to the jury on the question as to whether the plaintiff had not voided the policy by reason of false and fraudulent statements relative to the value of the personal property destroyed, and also as to whether the plaintiff had not in fact set fire to the building. As the record is now presented to us it appears that practically the same testimony was introduced as to the false and fraudulent swearing by the plaintiff as to the value of the personal property destroyed, and also as to whether the hotel was not in fact set on fire by the plaintiff. The verdict of the jury was general, and it must be concluded therefrom that whatever statements the plaintiff may have made as to the value of the property, were not knowingly or wilfully fraudulent, and that the hotel was not set on fire by him.

■ Disregarding the order in which the appellant alleges grounds for reversal, we will consider first the question relating to the value of the personal property.

The schedule as set forth in the proof furnished by the plaintiff to the defendant following the destruction of the property is as follows: 7 wood beds, 23 iron beds, 30 springs,

30 mattresses, 22 dressers, 3 bureaus, 52 chairs, 11 tables, 4 rugs, 4 sofas, 10 iron stools, dishes and cooking utensils, 50 pillows, 36 sheets, 6 blankets, 36 pillow-cases, 4 quilts and blankets; of the replacement value of $2,978.50, depreciation, $1490; sound value and loss $1488.50. No question is raised as to the hotel building being of a value in excess of the insurance.

A number of witnesses were called to testify as to the value of the property, and as to what personal property was contained in the hotel, and also its contents. The testimony is too voluminous to be set forth in this opinion, or in fact to be even summarized, and therefore only a general statement can be inserted herein.

So far as called to our attention, and so far as our investigation has been able to ascertain, only two witnesses controverting plaintiff's proof, testified as to the value of the personal property scheduled as being in the hotel. One testified that the property was of the value of about $250; another witness testified that the value was from $200 to $225. The record does not show that either one of these witnesses had any special knowledge or really any knowledge whatever of the value of the kind of property about which they were testifying. The testimony, however, does show that the schedule furnished by the plaintiff to the defendant did undoubtedly in several instances exceed in number the actual number of the articles claimed to be in the hotel, and also that the value of the same was considerably in excess of the actual value of the property in question. No special issues were submitted to the jury as to the value of the property, and as we have said, only a general verdict was rendered. From which it must be concluded again that the actual value was at least in excess of the amount of insurance, and the only question left for us to determine is as to whether the court correctly instructed the jury that if the statement of loss or proof of loss submitted by the plaintiff to the defendant was not a true statement, that it would not void the policy unless it was knowingly and wilfully false. This will be determined when we come to consider the instructions.

The record shows that during the pendency of the action, after the defendant had paid to the Indian Valley

Bank the sum of $905.31, and had taken an assignment of the note evidencing such indebtedness and the mortgage on the hotel property given to secure the payment thereof, that the real estate upon which the hotel had stood was sold by the plaintiff to Mr. and Mrs. James, and thereupon the appellant assigned and transferred the mortgage heretofore mentioned, to the purchasers. Mr. James, upon making the purchase, paid to the appellant the sum of $1100, which was applied to the payment of the mortgage held by the Hartford Insurance Company. The insurance company made out and delivered to James a satisfaction of mortgage. This transaction was conducted by and through a man by the name of L. L. Clough, who was called as a witness in the case, and testified as follows: "Q. What, if anything, did you have to do with it? [Sale and purchase of the hotel property.] A. I was requested by Mr. James to make the purchase from Mr. Singleton. Q. And did Mr. James make the purchase from Mr. Singleton? A. He did, yes sir. Q. And what was the purchase price? A. $1100.00. Q. And it applied to what? A. To the payment of the mortgage held by the bank—I would have to look at my notes and see the name of the Company. Q. The Hartford Fire Insurance Company? A. Yes, Hartford Fire Insurance Company. Q. And did you pay that money to the Hartford Fire Insurance Company on the mortgage held by it? A. I did, yes sir. Q. And did you receive a satisfaction of the mortgage? A. I did. Q. Have you that satisfaction here? A. Yes sir." The release of the mortgage is in the following words and figures:

"Know all men by these presents: That the undersigned, Hartford Fire Insurance Company, a corporation, does hereby certify and declare that a certain mortgage bearing date the 9th day of June, 1926, made and executed by George Singleton to Indian Valley Bank, a corporation, and assigned to the undersigned on the 30th day of January, 1928, by the said Indian Valley Bank (said assignment being recorded in the office of the County Recorder of Plumas County, California, in volume 2 of Assignment of Mortgages, page 119 on the 3rd day of April, 1928), and recorded in the office of the County Recorder of Plumas County, California, in volume 20 of Mortgages, page 406,

on the 10th day of June, 1926, is hereby canceled, released and discharged.

"Dated, San Francisco, California, November 19th, 1930.

"HARTFORD FIRE INSURANCE COMPANY

"By JOY LICHTENSTEIN, Manager."

On November 21, 1930, the following letter was written by counsel for the appellant to L. L. Clough, in relation to the note secured by the mortgage. Omitting the address, the letter is as follows: "Enclosed herewith you will find one of the original agreements, signed, as well as the release of mortgage duly acknowledged. You are undoubtedly aware that the note, which is secured by the mortgage, was introduced in evidence at the trial and is in possession of the court. When the case comes on for trial again we will take steps to have the same released, and will then cancel the same."

The contention of the appellant is that the transaction referred to was not in fact a satisfaction of mortgage and a payment of the note, but was only a transfer and surrender of its right of action to foreclose the mortgage as against Singleton; that it did not receive the $1100 as repayment of the sum which it had paid to the Indian Valley Bank, by reason of the fact that it had taken an assignment of the note and mortgage from the Indian Valley Bank, and therefore that the insurance company was entitled to hold the $1100 as its own money, freed from any liability to account to the plaintiff herein for the same, or to have the $1100 held as a repayment of the purchase price of the note and mortgage from the Indian Valley Bank. This claim is based upon an agreement which appears to have been entered into between Lillie S. James and the insurance company, by Joy Lichtenstein, its manager. This instrument recites: That whereas said James had purchased the interest of George Singleton in and to the real estate upon which the hotel formerly stood, and had offered to pay to the insurance company the sum of $1100, and was desirous of having the mortgage released so that the title to the property would be no longer encumbered thereby, it was agreed as follows: "First party agrees to pay to said second party immediately upon execution of this agreement, the sum of $1100.00, gold coin of the United States. Second party agrees to execute and deliver to first party immediately upon

receipt of such payment, a complete release and discharge of said mortgage, and further agrees not to further prosecute that part of said action calling for the foreclosure of said mortgage. Second party further agrees to cancel the note secured by said mortgage and to deliver the canceled note to first party. It is understood and agreed that this agreement is by way of compromise of second party's right to continue to prosecute said action for foreclosure for the full amount of the obligation secured by said mortgage."

In support of its contention appellant cites 6 California Jurisprudence, pages 171, 173 and 175, to the effect that: "Any suspension or forbearance of a legal right constitutes a sufficient consideration for a contract." That: "Forbearance to sue is a sufficient consideration to support a contract." Likewise: "The compromise of even a doubtful claim asserted in good faith constitutes a sufficient consideration for a new promise," etc.

Looking through the form of the agreement to the substance, it is clear that the insurance company had no property to sell or transfer, except the note and mortgage which had been assigned to it by the Indian Valley Bank. The mortgage gave a right, of course, to foreclose upon the property in the event that the note was not paid. The indebtedness, the amount of money which the insurance company had paid to the bank, and for which it received the evidences of its right to demand payment from the plaintiff, was all that it possessed. It had no right to foreclose upon the property independently of enforcing payment of the promissory note, and when the promissory note was canceled and surrendered, the right to foreclose ceased to exist. It is only a confusion of ideas which leads to the claim that there is a property right to institute and maintain foreclosure proceedings independently of the debt upon which a mortgage is based, or to secure the payment for which it is executed. The very moment the indebtedness ceases to exist and the note is canceled, there is an end to all other rights. There might be circumstances under which James might in equity have the note and mortgage revived and held valid as against the plaintiff, had the property not been taken under the obligation to pay off the note and mortgage.

The appellant had a right to be reimbursed the amount which it had paid to the Indian Valley Bank. Whether it received that amount from the plaintiff or Mr. James who purchased the property from the plaintiff does not affect the situation in the least. The moment the insurance company received payment and assigned the note and mortgage, discharged and canceled, to James, it had no further claim against the plaintiff in this action. Again, if the respondent is not entitled to the payment made by James, he would have a cause of action against the plaintiff, but the mortgage is already discharged and the note must be treated as actually canceled, by reason of what we have hereinbefore stated, that cancellation thereof would be made. Further, it is unquestionable that the plaintiff cannot be required to pay his indebtedness twice. Thus, if payment is made to the person holding the mortgage and note secured thereby, by the purchaser of the property instead of to the owner of the property, the debt is extinguished and does not constitute the basis for any further claim against the former owner of the property. Section 1473 of the Civil Code is broad enough to support every statement herein made. We may, however, cite the cases of *Crumlish's Admrs.* v. *Central Imp. Co.*, 38 W. Va. 390 [18 S. E. 456, 45 Am. St. Rep. 872, 23 L. R. A. 120]; *Danzinger* v. *Hoyt*, 120 N. Y. 190 [24 S. E. 294]; *Reynolds* v. *London etc. Co.*, 128 Cal. 19 [60 Pac. 467, 79 Am. St. Rep. 17]; 26 C. J. 438, where it is held that a mortgagee has no rights beyond the collection of his mortgage debt.

While the circumstances involved and some of the cases cited are not precisely similar to those presented here, the principles of law therein set forth are applicable.

The appellant strongly insists that it is untrue that any money was paid to the appellant on the mortgage, or that a satisfaction of the mortgage was executed by the appellant. The instruments which we have set forth speak for themselves. The language of the writing is: "Is hereby canceled, released and discharged." True, the word "satisfaction" is not used, but the life of the mortgage is ended and it was agreed that the note would be delivered marked "canceled" as soon as its possession could be obtained from the custody of the court where it had been filed as an exhibit upon the first trial of this action. The apparent good faith of the

appellant in contending that it has an ownership in the $1100 paid to it on account of the note and mortgage, separate and distinct from the payment and discharge of the note and mortgage, and to demand of the plaintiff an additional payment of $905.31, is the only reason for the extended consideration which we have given to this matter.

The third contention set forth as a ground for reversal is that the court erred in admitting the following testimony from the plaintiff relative to a transaction had with L. T. Bacher, the insurance agent through whom the policy referred to herein was executed by the appellant and delivered to the plaintiff, and brought out by counsel for the plaintiff: "We want to finish one thing at a time. Now, just state to the jury what your transaction was with Mr. Bacher? A. I met Mr. Bacher, and he had asked me before if I did not want some insurance, and I told him I would as soon as I got the place fixed up. Well, he went down and went through every room in the hotel, and had an envelope in his hand, and he wrote down everything; he went through every room in the house and marked down—I don't know what he put down, but afterwards he said, 'How much insurance do you want?' I said, '$5000; $4000. on the building and $1000. on the furniture.' And he went and wrote to San Francisco and got the policy. He said to me, 'You ought to take $1000 more on that'; and I said, 'The premium is too high.' Q. Now, what statement, if any, did Mr. Bacher make to you as to the value he placed on the contents of the hotel? A. About $2000. Q. And that statement was made by him after he had made an examination of the hotel? A. Yes sir." The foregoing testimony was elicited by counsel for the plaintiff after the appellant had brought out the following testimony from the witness: "Q. Well, in order to arrive at this value of $2000. you had to put some value on the wooden beds, didn't you? A. Mr. Bacher did that; I didn't have anything to do with that; Mr. Bacher went through and put that on. Q. Then, you made up the proof of loss and Mr. Bacher went through there and he fixed the value for you? A. No, he went through when he got the insurance, in every room in the house. Q. When did he write the insurance? A. Well, sir, I don't know that date either. Q. Well, the policy was written in April of 1926, wasn't it? A. Yes, I guess so.

Q. And he went through there in April of 1926, you said?
A. Well, I don't know. It was before that. Q. Did he take an inventory? A. We went through with a paper and wrote down. Q. What value did he place on those beds? A. I don't know what he put on them. I didn't ask him. Q. Was he the one that put this value of $10. on the iron beds? A. No, no. I just put that on myself. I don't know whether it is all right or whether it is wrong. Q. Mr. Bacher is dead, isn't he? A. Yes, sir, he is. Q. When did he die, do you know? A. No. Q. He died before the first trial, though, didn't he? A. Yes, I guess he did.''

In view of this testimony brought into the case by the appellant it is evident that no prejudice resulted from the testimony brought out thereafter from the same witness by counsel for the appellant. The door for the introduction of such testimony was opened by the appellant, and it is too late now to complain.

It is finally urged that reversal should be ordered by reason of the giving of certain instructions to the jury, and the refusal of certain instructions requested by the appellant. As a preliminary to the consideration of this final contention, we will first call attention to 24 California Jurisprudence 806, section 79, reading as follows: ''Numerous cases establish the rule that it is not error for a court to refuse to give a requested instruction if the subject matter thereof is substantially incorporated in the instructions given,'' etc.

The first instruction assailed, given at the request of the plaintiff, reads: ''You are instructed that by false swearing and fraud that will forfeit a policy is meant wilful fraud or false swearing, and not the result of inadvertence or mistake. It should be knowingly and wilfully false, or intended to defraud the Company; or if not so intended, must relate to some matter material to the inquiry concerning which the Company has a right to know the truth, and the effect of which would have a bearing upon its liability. Therefore, if you should find that the plaintiff did make any false statement, that is not sufficient to void the policy unless you further find that his statements were knowingly and wilfully false and intended to injure the Company, and if not so intended, must relate to some matter material to the inquiry concerning which the Company

has a right to know the truth and the effect of which would have a bearing upon its liability."

The principal case touching the question of false swearing is that of *Helbing* v. *Svea Ins. Co.*, 54 Cal. 156 [35 Am. Rep. 72]. It is there held (quoting from the syllabus): "A provision in the policy of insurance that the application for insurance has been considered as a warranty, and that if the property insured is over-valued in it, the policy shall be void, applies only where the statement as to value is intentionally false. So, also, where the policy provides that all fraud or attempted fraud by false swearing as to the loss shall cause a forfeiture of all claim under the policy, a wrongful or intentional false swearing is intended and not a mere discrepancy or innocent error. Also, whether fraud is inferred from an excessive statement of the value of the property in the original application, or of the loss in the preliminary proofs, is a question of fact, and in neither case does a legal presumption of fraud arise; nor is the burden cast upon the insured to establish that his statement was not intentionally false."

To the same effect is the case of *Miller* v. *Firemen's Fund Ins. Co.*, 6 Cal. App. 395 [92 Pac. 332], where this court, speaking through Mr. Justice Burnett, said (quoting from the syllabus): "Though wilfully false statements in the proof of loss void the policy when it so provides, yet an untrue statement, to have that effect, must have been knowingly and intentionally made by the insured, with knowledge of its falsity, and with the intention of defrauding the company. Whether a false statement was so made is a question of fact for the jury."

In the annotations following the case of *Columbian Ins. Co.* v. *Modern Laundry*, 277 Fed. 355 [20 A. L. R. 1159, 1164], are to be found an overwhelming list of cases supporting the following statement: "It is well settled that where an insured person, in making proof of loss by fire, over-estimates, through mistake or inadvertence, the value of the property destroyed, the over-valuation does not amount to fraud sufficient to void the policy." On page 1168 of the same volume will be found a long list of cases supporting the following as a correct statement of the law: "Where an insured knowingly and wilfully over-estimates in his proof of loss, the value of the property destroyed, with

the intention of deceiving the insured, such over-valuation will void the policy and defeat any right of the insured to recover thereon.'' And on page 1172 of the same volume will be found another long list of cases holding: ''That where it appears from the evidence that there was an over-estimate of value, it is a question of fact for the jury to determine whether the insured acted honestly and in good faith in making such valuation, or whether there was an intention on his part to defraud the insured.''

The court, at the request of the plaintiff, also gave two further instructions, alleged by the appellant to be prejudicially erroneous. The first of these instructions reads:

''You are instructed that if you find any discrepancy in the statements of the plaintiff in the respects claimed by the defendant, such discrepancy will not defeat the right of the plaintiff to recover if you find that they can reasonably be accounted for on the score of opinion or judgment honestly given or a mistake honestly made.''

The second instruction is as follows:

''You are instructed that where a question of fraud is involved, if there be two inferences equally reasonable and equally susceptible of being drawn from the proved facts, the one favoring fair dealing and the other favoring corrupt practice, it is the express duty of the jury to draw the inference favorable to fair dealing. Fraud must be proved, though not necessarily by direct evidence, but when the defendant's case goes no further than to establish a state of facts from which the inference of fraud may or may not be reasonably drawn, he has failed to establish his case by a preponderance of the evidence, and it becomes your duty to find in favor of innocence and uprightness.''

The contention is made that the instruction on the subject of discrepancy should have been to the effect that the discrepancy was accounted for satisfactorily by the plaintiff, and not that the discrepancy could be accounted for. However, in the case of *Miller* v. *Firemen's Fund Ins. Co., supra,* an identical instruction was given approval by this court, and hearing denied by the Supreme Court. No further comment is necessary.

In *Hind* v. *Oriental Products Co., Inc.,* 195 Cal. 655 [235 Pac. 438], the substantive portion of the second instruction which we have just quoted was approved as being

a correct statement of the law. Appellant's objection, however, goes to the last sentence where it says: "But when the defendant's case goes no further than to establish the state of facts from which an inference of fraud may or may not be reasonably drawn, he has failed to establish his case by a preponderance of the evidence, and it becomes your duty to·find in favor of innocence and uprightness." The objection to this portion of the instruction is more technical than substantial. It does not state that the defendant's case in this instance has gone no further. It simply states that where a defendant relies upon fraud to establish a defense, it must go beyond the showing that the issue may reasonably be decided either way, and must be supported by a preponderance of the evidence. Even in the instant case it was necessary, in order that the defendant prevail in its defense of fraud, to establish such defense by a preponderance of the evidence, and not to leave the issue in such a condition that a reasonable inference might be drawn either for or against the defense of fraud. If equally balanced, the defendant did not prove its case. We do not think that the jury, in view of all the instructions which covered the question of preponderance of the evidence and what it was necessary for each party to prove, was misled by any portion of the last instruction.

The defendant sets out in its brief several requested instructions which were refused, but a reading of the refused instructions discloses that every one of the refused instructions, save those covered by instructions given by the court at the request of the plaintiff, or upon its own motion, omitted an essential element necessary to establish the defense of fraud.

The court gave to the jury two instructions, correctly instructing the jury on the subjects included within the refused instructions requested by the appellant, to wit: "That if plaintiff, George Singleton, knowingly and wilfully made a false statement of or regarding a material fact in his proof of loss, or in the sworn examination held under the terms of the policy of insurance, or in his testimony, regarding the value of the property insured, or the loss or damage thereto by fire, the intention to deceive the insurer is necessarily implied as the natural consequence of such act." And further: "The policy provides that the

entire policy shall be void in case of any fraud or false swearing by the insured, and therefore if you find that the plaintiff, George Singleton, violated this provision of the policy by acting fraudulently or swearing falsely, you are instructed that the entire policy is forfeited thereby, even though the fraud or false swearing related only to one or two items of insurance." The last instruction quoted is more favorable to the appellant than it should have been. It should have included words indicating that the plaintiff knowingly and wilfully violated the provisions of the policy. (*Miller* v. *Firemen's Fund Ins. Co., supra; Clark* v. *Phoenix Ins. Co.*, 36 Cal. 168.)

The authorities which we have cited show that the court committed no error in its instructions to the jury.

No contention is made upon this appeal as to the incendiary character of the fire.

The judgment is affirmed.

Pullen, P. J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 22, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 20, 1933.