MATSUNAGA FISHING COMPANY,    )  CIVIL ACTION NO. 82-0009
                              )
             Plaintiff,  )
                              )
           vs.             )          DECISION
                              )
NEW HAMPSHIRE INSURANCE      )
COMPANY,                   )
                              )
            Defendant.  )
                              )

## DECISION

This Motion for Summary Judgment is Defendant New Hampshire Insurance Company's second attempt to obtain a judgment in its favor based on the fact that there is no genuine issue regarding Plaintiff's false swearing on his sworn Proof of Loss submitted to the Insurance Company. The first Motion for Summary Judgment was filed on June 17, 1982, wherein the Court found that there were material issues of fact in controversy on this matter and denied the motion.

The present motion is based partly on additional evidence acquired during the past year which Defendant alleges provides uncontradicted facts showing that false declarations and statements were made in order to obtain compensation from the

866

Insurance Company for items not destroyed in the fire. The record here consists of the pleading material, interrogatories and answers thereto, depositions of parties and witnesses, and several sworn affidavits of various persons. The Court has considered all the material contained in the record.

Summary judgment is appropriate only if no material factual issues exist and the movant is entitled to judgment as a matter of law. United States v. First National Bank of Circle, 652 F.2d 882, 887 (9th Cir. 1981). The Court must construe the pleadings, other record evidence and its attendant inferences most favorably to plaintiff. Harlow v. Fitzgerald, ____,U.S. ____, ____, n.26, 102 S.Ct. 2727, 2737, n.26, 73 L.Ed.2d 396, 409, n.26 (1982). A genuine factual issue may exist only if a viable legal theory would entitle plaintiff to judgment if it proves its asserted version of the facts. Ron Tonkin Gran Turismo v. Fiat Distributors, 637 F.2d 1376, 1381 (9th Cir. 1981), cert.denied 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981).

There is no question here that Plaintiff has made numerous contradictory statements regarding the losses incurred in the fire on NOvember 1, 1981. In his sworn Proof of Loss Plaintiff claimed that three fishing boats were destroyed by fire, and demanded payment therefor. However, in his deposition, and sworn affidavit submitted in support of his Opposition to the present motion, he says that only one boat was destroyed by fire; he even admits that he knew at the time of filing the sworn Proof of Loss that only one boat was destroyed.

In his sworn Proof of Loss Plaintiff claimed the loss of a Furuno Echo Sounder, however no evidence or remnants of a Furuno Echo Sounder were ever found after the fire. In fact, this same echo sounder was sold by Matsunaga to Guy Gabaldon on November 30, 1981 and was used for some time thereafter on a fishing boat.

In his sworn Proof of Loss Plaintiff demanded payment for the loss of five outboard engines. However, shortly before the fire, Guy Gabaldon was in the warehouse and saw only three outboard engines, and a fourth was outside on a 2.5 ton skiff. This outboard motor was then purchased by Mr. Gabaldon on November 30, 1981. The remains of only three outboard motors were found after the fire.

These clear and undisputed facts thus establish that (1) on November 1, 1981, a fire occurred in the warehouse in which Matsunaga kept fishing equipment; (2) on November 30, 1981 Matsunaga sold some fishing equipment to Guy Gabaldon; (3) on December 2, 1981 Matsunaga, in a sworn Proof of Loss, claimed that this very same equipment had been destroyed by the fire on November 1, 1981; and (4) much of this same equipment is still in existence today. There is thus no question that the sworn Proof of Loss submitted by Matsunaga to the Insurance Company contained material false statements.

The insurance policy provision under which Defendant seeks to prevail on his motion for summary judgment specifically provides, at Paragraph 13:

> If the claim be in any respect
> fraudulent, or if any false decla-
> ration be made or used in support

> thereof, ... all benefit under
> this policy shall be forfeited.

Moreover, it is a general rule of law that where an insured knowingly and wilfully overestimates in his proof of loss the value of the property destroyed such overvaluation will avoid the policy and defeat any right of the insured to recover thereon. See Zemelman v. Boston Insurance Co., 4 Cal.App. 3d 15, 84 Cal.Rptr. 206.

However, the mere making of false statements or erroneous valuations alone will not defeat a claim for payment under an insurance policy. The rule is well established that an untrue statement, in order to avoid the policy, must have been knowingly and intentionally made with the intention of defrauding the insurer. Pedrotti v. American National Fire Insurance Co., 90 Cal.App. 668, 266 P. 376. Avoidance of a fire insurance policy for an attempt to defraud by overvaluing property in a proof of loss requires proof of the factual elements essential to establish fraud; the making, knowingly and wilfully, of a material exaggeration of the worth of the property, with an intent and purpose to wrongfully obtain money or gain an unfair advantage over the insurer. See generally, 16 A.L.R. 3d 774, 793, and the cases cited therein.

The question thus becomes whether the false statements were made intentionally with the purpose to deceive or were innocent mistakes. Matsunaga, in his affidavit, states, "[t]hat the mistake in including three (3) boats was not intentional nor

made to cheat or defraud anyone," and "[t]hat the mistake was an honest one." However, in his deposition of April 2, 1982, Matsunaga stated that only one boat actually burned in the fire, and when he was redeposed on March 10, 1983 Matsunaga admitted that he knew that three boats were not destroyed in the fire. This implies at least a knowing and wilfull misstatement.

Further evidence in support of a fraudulent intent is found in Matsunaga's claim that one hundred thirty-five anchors were destroyed in the fire. This is the same number of anchors that Mr. Shiiko brought from Hokkaido to Saipan, and had listed in his equipment inventory. While Matsunaga claimed one hundred thirty-five anchors in his Proof of Loss, he stated in his two depositions that he never counted the number of anchors that were destroyed in the fire. However, in his affidavit of December 15, 1983 he states, "[t]hat on or about November 2, 1983 [sic], immediately after the fire, I personally counted 135 anchors that were damaged by the fire." (Emphasis added). Mr. Shiiko, while in Saipan in January 1983, found and identified 42 of those same anchors in another warehouse not involved in the fire.

Normally, it would be a question for the trier of fact as to whether the statements were made with the intent to defraud the insurer, but it becomes a legal question upon reaching the point where the Court must say that there is no way that this kind of mistake can be seen as innocent. Tenore v. American and Foreign Insurance Co. of New York, 256 F.2d 791 (9th Cir. 1958). Moreover, it is well settled as a general proposition that if an

870

insured, for any reason, knowingly and wilfully makes a material overvaluation in his proof of loss by fire, an intent to defraud the insurer may be inferred therefrom, upon the theory that everyone is presumed to intend the natural consequences of his own deliberate act. Singleton v. Hartford Fire Insurance Co., 127 Cal.App. 635, 16 P.2d 293.

Here , Matsunaga was given ample opportunity to explain why the false statements he made to the insurance company were innocent mistakes rather than intentional misrepresentations made with the intent to defraud. His answers to direct and straight-forward questions are, as Defendant claims, "typical of the mendacious witness," and his testimony "literally changes from minute to minute." Matsunaga has clearly and unequivocally stated that there was only one boat lost in the fire. The fact that there was only one boat lost in the fire is corroborated by all the evidence. Matsunaga was given the opportunity on April 2, 1982 and again on March 10, 1983, as well as in this instant Motion, to explain his mistake in listing an item not destroyed as being destroyed. His answers at the March 10th deposition are sometimes at complete variance with the answers at his previous deposition, and are often incomprehensible. His affidavit accompanying the Opposition to this Motion states that his wife typed the Proof of Loss and that she inadvertently included three boats therein. This is at odds with all prior testimony.

As the Court noted in its denial of Defendant's previous Motion for Summary Judgment, Plaintiff should not be allowed to

create his own issues of material fact simply by stating one thing at one time and then later contradicting himself. This is exactly what Matsunaga appears to be attempting to do here. While the Court must, of course, take the evidence most favorable to the Plaintiff, it is not required to consider the obviously false testimony of Matsunaga. Moreover, there is actually no factual dispute here. Virtually everything stated and every value recited has issued from the deposition testimony of Plaintiff or from documents authored and identifed by him.

It is hard to imagine a more clear example of an instance where the question of fraud or false swearing becomes one of law. This Court has no difficulty in finding that there exist no genuine issues as to material facts and that Plaintiff has forfeited all rights under the insurance contract by Matsunaga's submission of a fraudulent Proof of Loss.

Defendant's Motion for Summary Judgment is hereby GRANTED.

Judgment will be entered for Defendant against Plaintiff and the Clerk is ordered to enter such judgment.

DATED this 20ᵀᴴ day of December, 1983.

_____
JUDGE ALFRED LAURETA