[Civ. No. 3510. Third Appellate District.—May 11, 1928.]

WILLIAM R. ROBERTSON, Respondent, v. BEN WEINGART, Appellant.

H. W. Kidd, W. O. Schell, and Gerald F. H. Delamer for Appellant.

John B. Haas and John D. Home for Respondent.

TUTTLE, J., *pro tem.*—This action was brought by plaintiff to recover damages for the death of his wife through the negligence of defendant. The case was tried before the

court, and judgment was rendered in favor of plaintiff. The appeal is taken, under the "alternative method," from said judgment.

For some time prior to March 2, 1924, the decedent had been a duly registered guest at a hotel in Los Angeles, then operated and leased by Ben Weingart, sole appellant herein. As such guest she occupied a room on the fourth floor of the hotel. Plaintiff was her husband, and while he did not live at the hotel, he visited her frequently and often stayed over night there. The elevator in the building was not in running order at the times herein mentioned, and could not be used, so the only access decedent had to her room was by means of a stairway. Prior to her death decedent suffered from a physical defect, in that her right ankle was stiff, due to a prior accident. She walked with an impediment, up and down stairs. She always wanted support going up and down stairs, on account of her stiff ankle. The stairway has a number of turns as it ascends. At such turns the treads of stairs are V-shaped. Upon the one turn with which we are here concerned there is located an air shaft, some 27 inches wide and extending back 36 inches. Across the open side of this shaft is a hand-railing and gate. The top of the gate is a continuation of the said hand-rail. This shaft is some 17 feet deep and it opens directly upon the stairway and extends to the ceiling. The gate opens inward and to-toward the air shaft, and is hung on ordinary hinges. A small spring "catch" was attached to the gate, for the purpose of keeping it closed.

On Sunday, March 2, 1924, decedent had been in company with her husband for practically the entire day. She returned to the hotel at about 11:30 P. M., her husband leaving her at the door. She called at the hotel office and conversed with the woman in charge there, and used the telephone located in a booth in said office. She then proceeded to ascend the stairway already described, on her way to her room on the fourth floor. She failed to appear on Monday, and a search for her was instituted by her husband. Two days were spent in an endeavor to locate her. On Wednesday one of the employees of the hotel suggested to plaintiff that he examine the air shaft. The body of decedent was found at the bottom of said shaft. She had been dead several days. Her skull was fractured, and her

injuries were such as would cause instantaneous death. Her injuries could have been caused by the body falling against a hard object.

The complaint alleged that decedent was a guest at said hotel; that the only means of access to and egress from her said room was by said stairway. It then described the stairway, air shaft, and gate in detail. The negligence of defendant is charged in the following language:

"That on said 2nd day of March, 1924, and at all times herein mentioned said gate did not automatically close in a locked position, but swung in a partially closed position without locking and without being fastened in any manner whatsoever; that said spring catch was small, weak and ineffectual to securely lock said gate in place and was ineffectual to prevent the gate from swinging open upon pressure being applied to said gate from the stairway side; that at all times herein mentioned the said defendants and each of them, and their agents and servants, negligently, carelessly, recklessly and wrongfully maintained the said railing, gate and locking device in said condition, all of which was unknown to the said Rose Robertson."

"VI.

"That on the 2nd day of March, 1924, at or near the hour of 12 o'clock P. M. on said day and while the said Rose Robertson was a guest in said hotel, the said Rose Robertson relying upon the said railing, gate and locking device, as aforesaid, as a protection against falling over off and from the said stairway into the said air shaft, while passing along said stairway brushed lightly against the said railing and gate and that thereupon and by reason of the small, weak and ineffectual locking device on said gate, and by reason of the defective condition of the railing, gate and locking device, and by reason of the careless, negligent, reckless and wrongful conduct of the said defendant, and each of them in so maintaining the said railing, gate and locking device, and not otherwise, the said gate gave way, thereby precipitating and causing the said Rose Robertson to fall off the said stairway and through the said gateway and down the said airshaft to the bottom of the said airshaft, a distance of about 17½ ft., and causing the said Rose Robertson to strike the cement floor at the foot of the airshaft."

The findings of the trial court followed the language of the complaint, except that there was no finding made that "while passing along said stairway (decedent) brushed lightly against the said railing and gate." The finding on these facts reads as follows: "said Rose Robertson (decedent) relying upon said railing and gate therein, a part of said railing, as protection against falling off and over into said air shaft from said stairway, passed along and on said stairway; that said gate gave way and opened into said air shaft because of the negligent manner in which the railing, gate, locking device and spring hinges were maintained by the said defendant, Ben Weingart, thereby precipitating and causing the said Rose Robertson to fall off the said stairway and through the said gateway and down the said air shaft to the bottom of said airshaft, a distance of approximately 17½ feet, and caused said Rose Robertson to strike a cement floor at the foot of the said air shaft and causing said Rose Robertson to suffer severe and painful injuries—and that from said injuries the said Rose Robertson died on the 2nd day of March, 1924."

The principal ground of appeal relied upon by appellant is the insufficiency of the evidence to support the findings which we have just quoted.

The cause of action in this case is predicated upon the negligent manner in which defendant maintained the railing and gate in question. We are satisfied that there was substantial evidence to support this finding. Edwin L. Oker, detective lieutenant and witness for plaintiff, testified that he examined the gate on the day the body was found (some three days after decedent disappeared); that the gate looked to be closed. As he arrived at the gate he leaned lightly against it, it went open; that he found the gate would not close unless it was slammed exceedingly hard; the catch wouldn't catch; he procured a strap and strapped the gate tight so it couldn't come open any more. The gate would always come to and even with the balcony, but the catch wouldn't catch. It would come into position and become closed, but it would only be hanging on the hinges. Officer W. H. Thompson, witness for plaintiff, testified that when he went to the hotel to take the body out, on March 5th, the gate was unlatched; it wouldn't catch good; wouldn't catch

when he slammed the gate; it wouldn't catch good, so that left the gate so that it was liable to come unhooked any time; he examined the gate just to try to catch it so anybody else wouldn't fall through it. In view of the fact that the top of this gate was a continuation of the hand-rail for use of those who needed assistance in ascending, and that the gate opened directly off the stairway upon a shaft 17 feet deep and concreted at the bottom, the duty devolved upon the defendant to keep said gate in a reasonably safe condition. Was the trial court justified in concluding that, under the circumstances narrated, defendant was guilty of negligence? The answer to this question depends upon the degree of care which a hotel-keeper owes to one who is his guest. The general rule is, that it is the duty of a hotel-keeper to keep his buildings and premises in a condition reasonably safe for his guests. (32 C. J., p. 562. See, also, *Goldstein* v. *Healy*, 187 Cal. 206 [201 Pac. 462].) Applying the principle stated, the finding of the trial court was based upon substantial evidence to support it. A gate which would not "catch" or remain closed and which opened upon a pit 17 feet deep, with a concrete bottom, and which gate was a part of the hand-rail on the stairway, was a veritable death trap and the maintenance of the premises in this condition could very well be held a breach of the duty which the hotel-keeper owed decedent.

Conceding that the finding of the court upon the question of negligence might find support in the record, appellant earnestly contends that there is an entire absence of any evidence showing a causal connection between such negligence and the death of plaintiff's wife. He enumerates some eight other theories as to how the decedent might have met her death, all of which he states are more probable than the one advanced in the complaint. The case of *Puckhaber* v. *Southern Pacific Co.*, 132 Cal. 363 [64 Pac. 480], is relied upon by appellant as sustaining his position in respect to the failure to show that defendant's negligence caused the injury alleged. In that case a man was found dead one morning upon the tracks of the defendant railroad company. There was no question but what he had been mutilated by a train. It was proved that on a previous morning a train of defendant backed over the place where the body was

found, and there was no red light upon the rear of the train. A verdict for plaintiff was reversed, the court holding that there was an entire lack of causal connection between the negligence of defendant and the death of decedent. The verdict, the court stated, rested upon a foundation created by a mere guess. Applying the language of the case last cited to this one, appellant contends that "for aught it appears, deceased may have fallen in a fit," and thus precipitated herself down the air shaft. The trial judge had a right to presume, in the absence of evidence to the contrary, that decedent was a normal person in ordinary health and in full possession of all the senses and faculties with which the Creator endowed her. It must be presumed that decedent, in passing along the stairway, used due and ordinary care and precaution to avoid injury to herself. (Code Civ. Proc., sec. 1963, subd. 4; *Ross* v. *San Francisco-Oakland Terminal Railways Co.*, 47. Cal. App. 753 [191 Pac. 703].) While no one saw her when she fell to her death, the court may reasonably and justly have inferred that on the night in question, as she passed along the stairway, she grasped or relied upon the gate as part of the hand-rail to assist her in ascending or descending, and that the gate, by reason of the insufficient locking device, gave way and sent her to her death. We must bear in mind that there was evidence that deceased had a stiff ankle, and required support going up or down stairs. Every alternative theory brought forward by appellant as to the cause of death is based either upon the assumption and presumption that decedent was either negligent or suffering from some physical disability. There is no proof in the record to sustain these contentions. Negligence is never presumed under such circumstances, nor can it be presumed that decedent was suffering from "fits" or any other physical infirmity or disability. The various theories advanced by appellant upon the cause of death are at most but opposing inferences, and the evidence under such circumstances must be reviewed in the light most favorable to support the judgment, and all inferences reasonably possible from the evidence favorable to plaintiff must be indulged in by this court. (*Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421 [26 A. L. R. 123, 213 Pac. 42].)

Where certain findings of the trial court in a civil case are based upon circumstantial evidence, what rule shall

a reviewing court on appeal follow, when an attack is made upon the sufficiency of such evidence to sustain such findings? Appellant contends the rule to be that "If other conclusions may reasonably be drawn as to the cause of the injury from the facts in evidence than those contended for, the evidence does not support the conclusion sought to be drawn from it," citing *Wilbur* v. *Emergency Hospital*, 27 Cal. App. 755 [151 Pac. 155]. The same rule is declared in *Estate of Wallace*, 64 Cal. App. 107 [220 Pac. 682], with reference to which the supreme court, in denying a rehearing, expressed its disapproval, and referred to the correct rule as stated in a number of other cases decided by that court. The rule referred to by the supreme court was applied in the case of *Chalmers* v. *Hawkins*, 78 Cal. App. 733 [248 Pac. 727], and we quote it: "As the rule is stated in other jurisdictions, circumstantial evidence in civil cases, in order to sustain the verdict, need not rise to that degree of certainty which will exclude every reasonable conclusion other than that arrived at by the jury." Our supreme court has stated the rule to be, that before the verdict can be set aside upon appeal, upon the ground of the insufficiency of the evidence which is circumstantial in its nature, it must be clearly made to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusions reached by the court below. (*People* v. *Tom Woo*, 181 Cal. 315 [184 Pac. 389].) The principle contended for by appellant is more applicable as a rule to guide a jury in its deliberations upon the facts, than it is a rule to guide the appellate court in passing upon the sufficiency of the evidence. (*Peters* v. *McKay*, 136 Cal. 73 [68 Pac. 478].) The connection between negligence and injury is not one that is required to be made by an eye-witness or by direct testimony, nor must actual demonstration of such connection be made. The connection may be shown by circumstantial evidence in the same way that any other fact may be proved. (*Ross* v. *San Francisco-Oakland Terminal Railways Co.*, *supra*. Reviewing the evidence in the light of the correct rule which we have stated and conceding that the evidence may not exclude every supposition or theory to the contrary, we nevertheless hold that the conclusions reached by the trial court in respect to the manner of

death find reasonable support in the evidence, and that our inquiry is there terminated. (*Taylor* v. *United States Fidelity & Guaranty Co.*, 86 Cal. App. 382 [260 Pac. 898]; *Gjurich* v. *Fieg*, 164 Cal. 429 [Ann. Cas. 1916B, 111, 129 Pac. 464].)

It is contended that the evidence is insufficient to support the finding that decedent was not intoxicated at the time of the injury. Her husband testified that she had been with him all the day preceding the night when she disappeared, and that she was not intoxicated when he left her at 11:30 P. M., when she entered the hotel. An employee of appellant testified that when she saw decedent a few minutes afterward, in the office of the hotel, decedent was intoxicated. This is merely conflicting evidence, and the conflict was resolved in favor of respondent. There was substantial evidence to support this finding and we are precluded from disturbing the same.

Appellant complains that the proof does not conform to the facts pleaded in the complaint. On the question of negligence there was ample evidence to justify the court in finding that the gate and railing were maintained in a defective condition. Here again appellant indulges in several theories of his own to show that the injury might have been caused by the gate remaining open, hence there was a variance between pleading and proof. The answer to this is that the court upon substantial evidence found otherwise, and, as we have indicated, such conclusions cannot be disturbed. The cases cited by appellant on this question are those where there is an entire absence of any testimony to support the negligence where specific acts are plead. In the instant case, it is charged in the complaint that "defendants negligently, carelessly and wrongfully maintained said railing, gate, and locking device in said condition." There was substantial evidence to support a finding as to the truth of this allegation, and we are not called upon to analyze the various theories suggested by counsel. The fact that there was other evidence which, if it had been adopted by the court in its finding, might have occasioned a variance between pleading and proof, is of no concern. We see no merit in this contention.

The complaint alleged that decedent brushed lightly against the gate. No finding is made in this precise lan-

guage, but the court finds, in the language of the complaint, that decedent, *relying upon the railing and the gate, which was a part thereof,* passed along the stairway and said gate gave way. It is not essential that findings follow the precise language of the pleading. The question is, can the truth or falsity of the material allegations be demonstrated therefrom? (*Frascona* v. *Los Angeles Ry. Corp.*, 48 Cal. App. 135 [191 Pac. 968].) The ultimate fact to be found was, did decedent rely upon said gate and railing in passing along the stairway? There was no direct evidence that she brushed against the gate, but there were facts from which the court could infer that she relied upon the gate. The cases cited by appellant, including the Frascona decision mentioned, *supra,* involve the findings in respect to *negligence,* and they refer to the injustice done the opposing party where some particular act of negligence is alleged, and some entirely different act is attempted to be proved. That prejudice may result from such a situation we have no doubt. In the instant case the allegation thus omitted from the findings is not on the question of negligence, but is merely a probative fact connected with the details of the occurrence. The ultimate fact found by the court was that plaintiff *relied* upon the gate and railing. The findings must be given a liberal construction, in support of the judgment, by an appellate court, and it is inconceivable that any harm could have been done to defendant by reason of the failure of the court to follow the precise language of the pleading.

Error is urged in the admission of testimony by plaintiff as to the earnings of his wife. Such evidence was clearly admissible under a general allegation of damages, as proof of the loss of services of the deceased wife. It was an element of damages which naturally and necessarily resulted and flowed from the act complained of (8 Cal. Jur., p. 887), and was not required to be specially pleaded.

Numerous other assignments of error are made with reference to the admission of testimony. We have examined them with care, but can find no valid objection to the rulings made thereon by the learned trial judge. Moreover, appellant has neglected and failed to point out wherein he was prejudiced by such rulings. If an appellant

seeks a reversal upon such grounds, not only must he convince the reviewing court that the trial court erred, but he must go further and show that the ruling complained of was prejudicial in its effect and result. While there may be occasions where, from the nature of the evidence itself, prejudice in its admission must necessarily result, the record here does not permit of the application of that principle.

As to the order denying the motion for nonsuit, the action of the court was proper, in the light of the testimony of plaintiff as summarized, *supra*. There was substantial evidence tending to prove the facts necessary to make out plaintiff's case. Every favorable inference, fairly deducible, and every favorable presumption, fairly arising from the evidence produced, must be considered in favor of plaintiff upon such a motion. (*Boyle* v. *Coast Improvement Co.*, 27 Cal. App. 714 [151 Pac. 25].)

The judgment is affirmed.

Hart, Acting P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 9, 1928.

All the Justices present concurred.