[Civ. No. 2880. Fourth Dist. June 22, 1943.]

RUFUS PORTER et al., Respondents, v. SIGNAL TRUCK-
ING SERVICE, LTD., et al., Appellants.

290

Davies & Wallace for Appellants.

Rorick & Cottingham and Monroe & McInnis for Respondents.

GRIFFIN, J.—Plaintiffs and respondents brought this action for damages on account of injuries received in a collision on Pacific Highway, in the city limits of San Diego, on February 17, 1941. Plaintiff Ortega was riding as a guest in an automobile operated by plaintiff Porter in a southerly direction on Pacific Highway. Pacific Highway is a four-lane "through" highway (each lane is 22 feet wide) divided in the center by a concrete island or partition, and is the main highway leading from the city of San Diego to Los Angeles. Defendant Vance, driver for the defendant Signal Trucking Service, Ltd. was operating a loaded truck and trailer consisting of three units, in a southerly direction on that highway. These units were controlled by air brakes. The accident occurred at an intersection where Magnolia Avenue enters Pacific Highway from the west, but does not cross Pacific Highway. There is a break, however, in the concrete divider, just as if Magnolia Avenue continued through as a street at that point. There was a stop sign at the entrance of Magnolia Avenue into Pacific Highway. About 6 a. m., the time of the accident, the highway was wet and there was a heavy fog. It was still dark. As Vance came to the intersection of Magnolia Avenue and Pacific Boulevard, he was traveling between 40 and 45 miles per hour. The truck and trailer were upset in such fashion that the trailer lay on its side across the westerly or south-bound half of the highway, blocking practically the entire pavement. The highway was of dark concrete and as the trailer lay on its side the bottom of it was in the direction facing oncoming traffic from the

north. It was also of a dark color that blended with the color of the pavement and at the time of the morning between dark and daylight it was very difficult to see. Shortly after the trailer was upset on the highway the car driven by Porter collided with the trailer. According to plaintiffs' testimony there were no lights or other flare warnings on the truck or in the highway at the time. Porter and Ortega received serious injuries.

Vance testified in his deposition, offered in evidence by plaintiffs, that he was driving his truck south on Pacific Highway in the right-hand lane that morning; that as he was about 100 feet from the intersection he saw a car (Wilcox car) approaching from the west at about 5 miles per hour and at a position about 40 or 50 feet from Pacific Highway on Magnolia Avenue; that his lights and the lights on the Wilcox car were burning; that he noticed that the Wilcox car came onto Pacific Highway without stopping at the boulevard stop sign and crossed "the center line about six feet" and then stopped; that Vance applied his brakes and immediately "swerved" his truck suddenly to his left to avoid striking the Wilcox car; that he then ran into the center island and that the trailer portion turned over, as indicated; that after the Wilcox car came to a stop in the highway it backed up, otherwise he would have hit it. He also testified that the cab portion of the truck did not turn over and that he was not hurt; that he jumped out of his truck to "grab his flares" but did not have time to place them; that he saw two machines, about 150 yards or so north of him, coming south so he waved his arms at them; that in about 8 to 10 seconds one car stopped and the second one (Wilcox's car) "pulled to the inside and ran right into the center of the semi." He also testified that he later put out flares in the highway and that he noticed that the skid marks made by the truck were about 200 feet long.

The testimony of an occupant of the Wilcox car produced by defendants, gives a different version of the accident as to where that car stopped at the intersection. He testified that the Wilcox car approached the intersection at about five miles per hour; that he saw the defendants' truck approaching three or four hundred feet north of the intersection; that the front wheels of the Wilcox car "went up about three or four feet on the shoulder," three or four feet west of the

pavement and stopped; that it did not stop on the pavement and did not back up at any time; that the truck seemed to swerve a little bit to the left about 100 feet north of the intersection; that it was traveling between 40 and 45 miles per hour; that it hit the center island and upset the back trailer; that within a ''few seconds'' two cars came from the north traveling about 50 or 60 miles per hour; that Vance was waving his hands at the oncoming cars; that he later heard a crash.

Plaintiff Porter testified that as he was coming from the north he stopped a few miles north of the scene of the accident and that a truck and trailer, which he did not identify as that belonging to defendants, overtook him going south about 60 or 65 miles per hour; that that was the only one to pass him that morning; that as he later approached the intersection here involved he was using his windshield wiper on account of the fog and that he had been averaging about 30 or 35 miles per hour; that he was driving on the right-hand lane going south and that as he crossed the intersection he was traveling about 25 miles per hour and then picked up speed to about 30 or 35 miles; that suddenly he saw a dark object 20 or 25 feet in front of him; that it showed up quickly; that he tried to put on his brakes but did not have time; that he saw no lights of any kind ahead of him on the truck or otherwise; that no other vehicles were ahead of him or around as he crashed into the trailer on the truck; that he was knocked unconscious and removed to a hospital where he remained for about one week.

Plaintiff Ortega corroborated the testimony of plaintiff Porter. Other witnesses also testified to the effect that they saw no signal man, lights or flares on or about the truck immediately after the accident; that the surface of the highway was wet and that it was foggy.

A police officer, called to the scene of the accident, testified that he ordinarily rode a motorcycle on such calls but due to the fact that the pavement was wet or slippery he rode in an automobile on that occasion; that the scene of the accident was about 40 to 50 feet south of the intersection; that there were apparently 250 feet of skid marks from the 16 wheels of the truck measured from the first part of the skidding to the last.

Defendants now contend (1) that this is not sufficient evi-

dence to show that the defendant truck driver was negligent *before* his truck was overturned on the highway, and not sufficient evidence to show any act of negligence *after* such happening; (2) that if there was prior negligence on the part of the driver, it was not the proximate cause of the injury to the plaintiffs; and (3) that plaintiff Porter was guilty of contributory negligence as a matter of law.

These issues were submitted to the jury. Verdicts were rendered in favor of plaintiffs. The amounts of the verdicts as they finally stand, is not questioned in relation to the sufficiency of the evidence to support them.

If the evidence is sufficient to establish the negligence of the defendant truck driver prior to and at the time the trailer upset on the highway and that such negligence was a proximate or efficient cause of the injuries to plaintiffs and that cause either directly produced or set in motion a chain of events which, if uninterrupted by any independent, intervening, efficient cause, produced the injuries complained of and without which such injuries or damage would not have occurred, then it will not be necessary to determine the other question presented, whether defendant truck driver was negligent in failing to put out flares or give a proper warning of the dangerous position of the truck, as contended.

The court fully instructed the jury that ". . . the burden rests upon plaintiffs to establish by a preponderance of the evidence that the proximate cause of the accident was the negligence of defendant Vance. By proximate cause is meant the efficient cause, or that cause which either directly produces or sets in motion a chain of events which, uninterrupted by any independent, intervening, efficient cause, produces the injury complained of and without which such injury or damage would not have occurred.''

In analyzing the testimony produced, we find ourselves immediately confronted with the rule of which appellants' counsel are fully aware, that because of the presumptions in favor of the verdicts and judgment the appellate court, when reviewing the evidence in support of such verdicts and judgment must take into consideration all of the evidence rather than certain disconnected portions thereof. It must accept as true all evidence tending to establish the correctness of the finding or verdict, and it must consider it in the most favorable aspect toward the prevailing party and

give to him the benefit of every favorable inference that can reasonably be drawn in support of his claim. (2 Cal.Jur. p. 879, sec. 515.) In view of the rule, we must accept as true the evidence and inferences supporting the theory that the Wilcox car did stop three or four feet west of the concrete pavement; that the defendant driver was traveling at least 40 or 45 miles per hour; that the highway was slippery and the weather foggy, and notwithstanding these facts, he negligently and erroneously misjudged the true conditions then and there existing, suddenly applied his brakes and ''skidded'' for a distance of approximately 200 feet and failed to keep his truck under proper control at the time; and that such negligence was the proximate or original cause of the accident, unbroken in sequence, without any intervening, efficient, independent cause, which produced the injuries complained of and without which such injuries would not have occurred.

█ The trial court properly gave an instruction under the basic speed laws of this state (secs. 510 and 511 of the Vehicle Code) to the effect that no person shall drive a vehicle upon the highway at a speed greater than is reasonable or prudent, having due regard for the traffic on and the surface and the width of the highway, and in no event at a speed which endangers the safety of persons or property. █ Whether the truck driver was violating those provisions of the Vehicle Code under the conditions here related was a question of fact. █ The legal requirement that drivers of vehicles shall drive in a careful manner and with due regard for the safety of others is a recognition of the rule that prima facie speed limits fix a prima facie maximum, but not a minimum, for careful driving. (*Cook* v. *Miller,* 175 Cal. 497 [166 P. 316]; *Weaver* v. *Carter,* 28 Cal.App. 241 [152 P. 323]; *Zarzana* v. *Neve Drug Co.,* 180 Cal. 32 [179 P. 203, 15 A.L.R. 401].)

The trial court gave an instruction on the imminent peril rule and in addition thereto, at the request of defendants, gave the following instruction, which was broader and much more favorable to the defendants than they were entitled to receive: ''You are instructed that a party has a right to assume that other persons using the highway will obey the law and that the driver of the truck and trailer in this case had the right to assume that Wilcox would stop his Buick automobile. . . .'' The instruction thus requested and given,

omitted by reference the requirement that before the defendant driver could rely upon such assumption, he must himself be without fault. (*Carroll* v. *Central Counties Gas Co.*, 74 Cal.App. 303 [240 P. 53]; *Angelo* v. *Esau*, 34 Cal.App.2d 130 [93 P.2d 205].) Notwithstanding these instructions, the jury found against defendants and the issues there presented.

■ Appellants' next contention that plaintiffs were guilty of contributory negligence as a matter of law is not meritorious. The evidence was conflicting as to the speed of the plaintiffs' car at the time. Whether proper precautions were taken by the driver of that car under the circumstances enumerated was a question of fact for the jury. That question was decided in plaintiffs' favor. Under the evidence, we cannot disturb that finding. (*Black* v. *Southern Pacific Co.*, 124 Cal.App. 321 [12 P.2d 981].)

We have carefully examined all of the instructions given and considered them in connection with the others about which appellants complain. We conclude that the jury was fully and fairly instructed as to the law and that the evidence supports the verdicts and judgment based thereon.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.