[Civ. No. 7030.   Third Dist.   June 27, 1944.]

NAND SINGH, Respondent, v. GEORGE R. CORBIN, Appellant.

U. W. Brown, John H. O'Donnell and Percy Napton for Appellant.

Duard F. Geis for Respondent.

ADAMS, P. J.—Plaintiff and respondent, Nand Singh, brought this action, alleging that defendant was indebted to him for labor and services rendered and money advanced by him to defendant. His claim was that during the years 1935 to 1939, inclusive, he worked for defendant with his own farming equipment in preparing, irrigating and harvesting rice and other crops grown in part on lands owned by appellant and in part on lands leased by appellant from others, and that during said period he advanced moneys to

appellant or for his benefit, mainly in payment for labor performed by others in the production of the rice crops.

Appellant and defendant, Corbin, denied plaintiff's allegations and claimed that during all of the years above mentioned his rice lands and those leased by him from others were *leased* to Nand Singh upon a share cropping basis, the agreement being that Nand Singh should furnish his own equipment and materials and the labor necessary for the production and harvesting of rice, and should pay to Corbin, as rental, one-third of the crops produced.

The action was tried by the court sitting without a jury, and resulted in a judgment for plaintiff. Defendant has taken this appeal on the sole ground that the evidence fails to support the findings that during the period under consideration plaintiff was employed by defendant and that the relationship of landlord and tenant did not exist between the parties during such years.

In support of his contentions appellant relies upon his own testimony that plaintiff had during previous years leased defendant's land, and that he leased it during the period in controversy; also upon evidence that plaintiff hired, paid and fed the help used in his operations, that plaintiff claimed an interest in the rice crops, that, when harvested, the rice was separated into piles of one-third and two-thirds thereof, that plaintiff bought fertilizer, and that defendant had taken title to plaintiff's engine as security for plaintiff's indebtedness to defendant.

Respondent, in reply, points out evidence showing that appellant raised other crops besides rice upon his lands; that he leased lands from others for rice culture; that he warehoused all crops, including rice, solely in his own name; that he mortgaged and sold such crops; that he intermingled the proceeds of rice sales with those of other crops and with his other income in one bank account in his own name; that he kept all parity, conservation and benefit payments received from the Agricultural Adjustment Administration, though under the law such payments were required to be divided between landlord and tenant when that relationship existed; that defendant never kept books of account disclosing the relationship of landlord and tenant between himself and plaintiff, or giving plaintiff credit for any part of the proceeds of rice crops sold, and never accounted to plaintiff therefor; that he personally negotiated all contracts for har-

vesting, hauling and warehousing of the rice; that he frequently gave orders to men working in the rice; and that he never produced any book entries showing any charges against plaintiff for seed purchased by defendant, for interest on money borrowed by plaintiff, or for bills for threshing, sacks, twine, etc., which would have been chargeable to plaintiff had he been the owner of the crops.

We have read the entire record and the testimony shows without conflict that plaintiff owned and operated a tractor and other farming equipment and that he was experienced in farming, especially in the production of rice; that defendant was engaged in general farming including the growing of rice, alfalfa and barley, and that he owned certain lands and at times leased the lands of others for farming operations but that he had no adequate equipment for his operations. Plaintiff himself testified that during the years 1935 to 1939, inclusive, he plowed, dragged and disked rice land for defendant at an agreed price per acre, using his own equipment; that he also sometimes cultivated a portion of defendant's land for the production of barley or alfalfa or corn at an agreed price per acre; that he cut and bound rice with his own tractor and binder, and sometimes but not always, threshed the rice; that he also repaired levees on defendant's lands at an agreed price per hour, using his own equipment; that at times, at Corbin's request, he hired others to assist him, and advanced their wages at defendant's request; that he also had an agreement with Corbin to receive wages of $125 per month for sowing and irrigating rice for a part of each year, plaintiff to use his own truck and pay for the gasoline used therein; that from time to time Corbin paid him sums of money, and sometimes bought groceries for him, and furnished him with butter; that he never had any written agreement with Corbin, that the latter kept the books and plaintiff did not. He also testified that in 1920 and 1921 he and his brother leased land from Corbin, but that neither of them ever had a lease thereafter; that in 1934 he had a settlement with Corbin and received a check for $1,000, but that there had been no settlement since that time; that he was not a rice partner with Corbin.

While defendant denied the statements of plaintiff and testified that he leased his lands to plaintiff, he admitted that there was no written lease, that all the rice was stored in de-

fendant's name and sold by him, that he deposited the proceeds of sales of the rice in his own bank account with his other funds, that at times he borrowed moneys on his warehouse receipts for the rice, that the books kept by him showed no entries in favor of plaintiff but only charges for moneys or goods advanced to plaintiff, and that he collected and kept all the soil conservation benefits resulting from the rice operations.

Considering the evidence in its aspect most favorable to plaintiff and giving him the benefit of all favorable inferences therefrom, as this court must do, it cannot be said that there is insufficient evidence to sustain the judgment of the trial court. (*Macaulay* v. *Booth,* 53 Cal.App.2d 757, 761 [128 P.2d 386]; *De la Motte* v. *Rucker,* 55 Cal.App.2d 226, 229 [130 P.2d 444]; *High* v. *Pacific Gas & Electric Co.,* 52 Cal.App.2d 701, 709 [126 P.2d 911, 127 P.2d 588]; *Nichols* v. *Southern Pacific Co.,* 58 Cal.App.2d 91, 97 [136 P.2d 332]; *Norgard* v. *Estate of Norgard,* 54 Cal.App.2d 82, 89 [128 P.2d 566]; *Porter* v. *Signal Trucking Service,* 59 Cal.App. 2d 289, 293 [138 P.2d 753].)

Furthermore, the arguments made here were fully presented to the trial court on a motion for a new trial which, as stated by the trial court in denying said motion, was based on the sole contention that the evidence was insufficient to justify the decision and that the evidence preponderated in favor of defendant. That court was in a better position than we are to judge of the credibility of the witnesses and the weight to be given to the evidence, and there being ample evidence to sustain its findings and judgment, they may not be disturbed on this appeal.

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.