[Civ. No. 3809.   Fourth Dist.   Jan. 16, 1948.]

L. G. SWALES et al., Appellants, v. WILBUR H. BARR, Respondent.

Hampton Hutton for Appellants.

Forgy, Reinhaus & Forgy for Respondent.

MARKS, J.—This is an appeal from a judgment for defendant in an action in which plaintiffs sought to recover $1,100 as commission on the sale of a yacht owned by defendant.

L. G. Swales is a duly licensed yacht broker and O. T. Walkey is a duly licensed yacht salesman working under him.

Wilbur H. Barr was the owner of the yacht Branta, which was anchored at its mooring in Newport Harbor about 1½ miles from the place of business of plaintiffs.

J. W. Reckman operated a boatswain's locker at Newport Harbor. He repaired boats, sold hardware and did an occasional brokerage business. He had done some extensive work for Mr. Barr on the Branta and he knew that Mr. Barr might want to sell it.

On January 3, 1946, Dr. Donald W. Barber contacted Mr. Reckman and asked him if he knew of a boat he could use or buy. Reckman testified: "And I suggested the Branta to him. He was interested, but I was in no position to show

it to him, so I referred him to Mr. Walkey, and I called Mr. Barr (over the telephone) and told him, 'I sent a party down to Mr. Walkey and if it was all right for Mr. Walkey to show the boat.' '' And that Barr replied "It is all right, go ahead.''

Dr. Barber went to see Mr. Walkey, who took him out to see the Branta. The boat was locked and Walkey did not have the keys. He telephoned Mr. Barr, telling him his business and that Mr. Reckman had phoned about the boat. Permission was given to show the boat and Walkey obtained the keys from Mr. Barr's secretary. He did not tell Mr. Barr the name of the prospective purchaser.

After obtaining the keys Walkey took Dr. Barber back to the Branta and they made a thorough inspection of it. Dr. Barber gave Walkey a check for $900 and signed an offer of purchase, reading in part as follows:

"Newport Beach, California
Jan. 3, 1946

"Mr. O. T. Walkey,
"Newport Beach, California
"Dear Sir:

"You are hereby instructed to offer the sum of $9,000.00, payable cash, for the vessel known as the 'Branta' now moored in Newport Beach waters.

"This offer is accompanied by a deposit of $900.00 in accordance with the Ship & Yacht Brokers Act and which is to be returned to me in the event this offer is not accepted.''

Walkey communicated this offer to Mr. Barr, who rejected it saying his price for the Branta was $11,000. Walkey returned the check to Dr. Barber and a few days later, about January 11th, interviewed Mr. Barr and was told by him that he was not quite ready to sell the Branta as he had not owned it six months. So far as the record shows, Walkey did nothing more in connection with the sale of the boat except phoning Dr. Barber that Mr. Barr would not take less than $11,000, and receiving the reply that Dr. Barber would not pay that sum, but would go East and buy a boat. The keys were returned to Mr. Barr and the check to Dr. Barber. That Walkey had no express authority to sell or to negotiate the sale of the Branta is admitted.

Later, Dr. Barber contacted Mr. Barr directly and after three conferences purchased the Branta. He paid Barr

$6,500 and transferred a six-meter boat to him. It is admitted that Barr received the value of $11,000 for the Branta. All approaches were made by Dr. Barber and the transaction was completed about January 20, 1946.

The complaint in this action is in two counts. The first alleges that Barr employed plaintiffs to find a purchaser for the Branta and promised to pay the usual commission of 10 per cent of the selling price. The second count alleges that Barr is indebted to plaintiffs in the sum of $1,100 for services as broker and salesman in the sale of the Branta, performed at the request of defendant.

The answer denied the foregoing allegations of the complaint and in an amendment to the answer alleged that plaintiffs abandoned any employment they might have had for the selling of the Branta and also abandoned Dr. Barber as a purchaser.

The trial court found that neither of the plaintiffs were employed by defendant to procure a purchaser for the Branta; that defendant did not promise to pay plaintiffs any commission; that plaintiffs did not procure Dr. Barber as a purchaser of the boat at any price acceptable to defendant; that Dr. Barber terminated his negotations through plaintiffs for the purchase of the Branta and that thereafter plaintiffs did nothing to procure Dr. Barber as a purchaser of the boat.

It is obvious from the facts already outlined that these findings are all well supported unless, as argued by plaintiffs, the law compels the inference to be drawn from them of an implied contract of employment and an implied promise to pay a commission. It is admitted that there was no express contract of employment and no express promise to pay a commission.

It is clear that plaintiffs' right of recovery must depend on an implied contract to be established by inferences to be drawn from the evidence. In discussing the question of implied contracts in *Medina* v. *Van Camp Sea Food Co.*, 75 Cal.App.2d 551 [171 P.2d 445], it was said:

"It is generally held that the existence of an implied contract is usually a question of fact for the trial court. Where evidence is conflicting, or where reasonable conflicting inferences may be drawn from evidence which is not in conflict, a question of fact is presented for decision of the trial court. Here, reasonable conflicting inferences might

have been drawn from the evidence. As the trial judge drew the reasonable inference in favor of plaintiffs, and as the existence of an implied contract was a question of fact for the trial court, its decision on that question is conclusive here. (*Caminetti* v. *National Guar. Life Co.*, 56 Cal.App. 2d 92 [132 P.2d 318]; *Silva* v. *Providence Hospital of Oakland*, 14 Cal.2d 762 [97 P.2d 798].)

"Further, on appeal we must draw all reasonable inferences in favor of the judgment. (*Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421 [213 P. 42, 26 A.L.R. 123]; *Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689].) As the trial judge resolved the conflicting inferences in favor of plaintiffs, and as there are reasonable inferences supporting the judgment, we cannot disturb it here."

Further, where two conflicting reasonable inferences may be drawn from the same evidence it is the province of the trial judge to decide which should be drawn and any attempt of the appellate court to draw a contrary inference amounts to an invasion of the powers of the trial court. (*Juchert* v. *California Water Service Co.*, 16 Cal.2d 500 [106 P.2d 886]; *High* v. *Pacific G. & E. Co.*, 52 Cal.App.2d 701 [126 P.2d 911, 127 P.2d 588].) As the trial judge drew the inference in favor of defendant on the questions of implied contract and implied promise to pay, and as the inference drawn is reasonable, it is conclusive here, assuming without holding that a contrary inference might have been reasonably drawn.

There is another compelling reason why the judgment must be affirmed and that is the finding supporting the defense of abandonment, as the evidence supports that defense.

In *Baird* v. *Madsen*, 57 Cal.App.2d 465 [134 P.2d 885], it is said:

"The governing rule in such cases is stated in 8 American Jurisprudence, p. 1069, as follows: 'If a broker, after introducing a prospective customer to his employer to no purpose, abandons his employment entirely, or if, after procuring a person who proves to be unwilling to accept the terms of his principal, he merely ceases to make further endeavors to negotiate a deal with that particular individual and all negotiations in that direction are completely broken off and terminated, he will not be entitled to a commission if his employer subsequently renews negotiations with the

same person, either directly or through the medium of another agent, and thus effects a sale without further effort on the part of the broker first employed.' "

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.